UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

JOSE ANTONIO ALVAREZ,

        Plaintiff,

    v.

COMMISSIONER OF THE SOCIAL
SECURITYADMINISTRATION,

        Defendant.

6:15-cv-01981-YY

OPINION AND ORDER

YOU, Magistrate Judge:

        Plaintiff Jose Antonio Alvarez ("Alvarez") seeks judicial review of the Social Security Commissioner's ("Commissioner") final decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act").  This Court has jurisdiction under 42 USC §§ 405(g) and 1381(c), and reviews to determine that the Commissioner's decision is based upon substantial evidence.  *Id.*; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F3d 1090, 1098 (9th Cir 2014).  All parties consented to a Magistrate Judge's entry of final judgment pursuant to 28 USC § 636(c) and FRCP 73.  The Commissioner's decision is REVERSED and REMANDED for the following reasons.

1 – OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Alvarez applied for DIB on March 20, 2014, alleging disability since December 1, 2013. Tr. 148-49.[1] He applied for SSI on the same date. Tr. 150-54. Mr. Alvarez additionally requested "critical case status" and expedited disability determination pursuant to 42 USC § 405(q) on October 24, 2014, due to homelessness. Tr. 102-03.

The Commissioner denied Mr. Alvarez's applications initially and upon reconsideration. Tr. 90-98, 104-09. An Administrative Law Judge ("ALJ") held a hearing on May 29, 2015 (Tr. 31-49), and found Mr. Alvarez not disabled on June 11, 2015. Tr. 15-25. The Appeals Council denied request for review on August 17, 2015. Tr. 6-8. This action finalized the ALJ's decision, making it subject to this court's review. 20 CFR §§ 404.981, 416.1481, 422.210.

## BACKGROUND

Born in 1956, Alvarez was 58 at the time of his hearing. Tr. 36, 52. He has an eleventh-grade education and past relevant work experience as cabinet maker and painter. Tr. 187. Mr. Alvarez alleges he is presently disabled due to skin cancer lesions and excisions on his face, which impair his eyesight, as well as anxiety and depression. Tr. 180.

## MEDICAL BACKGROUND

Beginning in May 2012 Mr. Alvarez sought treatment from primary care physician Arnoldo Aleja Padilla Vasquez, M.D., for diabetes, hypertension, and other routine matters. Tr. 433-444. He first sought treatment from his primary care physicians for a skin growth on his left cheekbone on October 11, 2013. Tr. 409. Mr. Alvarez was also being treated for anxiety at this time. *Id.*

---

[1] Citations "Tr." refer to indicated pages in the certified transcript of the administrative record, filed on April 1, 2016 (Dckt. # 12).

On October 25, 2013, primary care physicians characterized the skin growth as a lesion and diagnosed cellulitis. Tr. 411-12. The wound began discharging blood on November 11, 2013, and a primary care physician prescribed antibiotics. Tr. 414. This treatment continued, with multiple antibiotics, on December 3, 2013, and December 12, 2013. Tr. 416-17. On December 17, 2013, a dermatologist stated that the wound was not healing and "growing rapidly." Tr. 418.

Mr. Alvarez received a definitive invasive squamous cell carcinoma (skin cancer) diagnosis on January 2, 2014. Tr. 375. The tumorous lesion grew to 6.5 centimeters by 7.5 centimeters, which covered Mr. Alvarez's left cheek and brow and was characterized as "large" and "huge." *Id.* at 316-18; 375. Plastic surgeon Garth Meldrum, M.D., began a series of staged excision operations on January 8, 2014. *Id.* at 254-56. Dr. Meldrum removed the tumor and extensively removed surrounding tissue from Mr. Alvarez's left cheek, eyelid, and deep facial tissue. *Id.*

Mr. Alvarez began radiation treatment on January 10, 2014. *Id.* at 276, 280. Radiologist-oncologist Merideth Wendland, M.D., stated that ideally radiation would not occur prior to surgical healing, but the risk of rapid recurrence did not justify delay. *Id.* at 277. Following pathology reports and imaging studies on January 22, 2014, otolaryngologist David Tom, M.D., recommended a pariodectomy (excision of the parathyroid gland) in addition to further facial reconstruction surgery. *Id.* at 259. Drs. Tom and Meldrum performed that surgery on January 23, 2014. Tr. 285-92, 365-66.

Dr. Meldrum performed further upper and lower eyelid reconstructive surgery on March 6, 2014. Admin. R. 316-18. He also performed reconstructive surgery on Mr. Alvarez's cheek. *Id.* Both features were distorted with anatomical and functional

impairment due to the previous "huge" surgical excisions and resulting scar tissue. *Id.* at 316.

On June 4, 2014, treating oncologist-radiologist Dr. Wendland stated that Mr. Alvarez was three months-post radiation treatment, and is "overall doing well with no clinical or radiographic evidence of recurrent or residual disease." *Id.* at 345. Dr. Wendland explained in some detail that the excised tumor was very close to Mr. Alvarez's left eye with deep margins involving nerve pathways. *Id.* at 273. She also noted Mr. Alvarez's report that his insurance coverage was changing, and would not cover Dr. Meldrum's services. *Id.* at 273.

On October 31, 2014, primary care physician Dr. Padilla noted Mr. Alvarez's left eyelid drop due to the surgical procedures, with associated vision impairment and reports of left eye pain. Tr. 420-21. On November 17, 2014, Dr. Padilla's associate, William Cox, M.D., noted that Mr. Alvarez continued to experience left eye pain and irritation, which worsened throughout the day. Tr. 421. Dr. Cox identified two eye issues, one relating to external irritation, and the second relating to internal pain "emanating from near the left orbital area back toward his ear." *Id.* Dr. Cox believed the external pain was due to eyelid disfigurement and noted, "this is a remarkable reconstruction job considering the extent of the disease and grafting required." *Id.* Dr. Cox stated that the internal pain was "not likely to anything ocular but neuralgic in nature," and referred Mr. Alvarez to another physician. *Id.*

On December 30, 2014, Dr. Meldrum stated found no evidence of tumor recurrence and stated that Mr. Alvarez's lower eyelid repair "looks good" but that his upper eyelid did not function properly due to distortions caused by scar tissue. *Id.* at 380. He also found that

Mr. Alvarez experienced consequent dryness and discharge from the eye, and could not keep his left eye open when fatigued.  *Id.*

On January 27, 2015, Dr. Meldrum addressed Mr. Alvarez's eyelid and facial scar tissue and distortion, and stated "patient's problem is unchanged."  *Id.* at 278.  He recommended further reconstructive surgery for both issues.  *Id.* at 278.

An April 9, 2015 head and neck CT showed "stable" comparative imaging, and a "nodular soft tissue density" near Mr. Alvarez's jaw which could "represent post-treatment change or tumor."  Tr. 426.

Dr. Padilla next treated Mr. Alvarez on May 1, 2015.  Tr. 422.  Dr. Padilla again concluded that Mr. Alvarez's "left eyelid is affected, as well as the tissues in the lower orbital area.  For this reason the patient has significant limitations . . . he fatigues frequently and at times feels unsteady because of the [sic] adjusting his estimate with his left eye but [sic] to be able to see."  *Id.*  Dr. Padilla also noted that Mr. Alvarez previously performed "landscaping/construction work" and is "exposed usually to sun and dust because of his occupation.  There is concern because on top of visual field limitations he has with his left eye he also has difficulty closing it and this [sic] causing significant irritation" and concurrent recurrent infection risk.  *Id.* at 422-23.  Finally, Dr. Padilla  stated that Mr. Alvarez was experiencing anxiety-related panic attacks and depression.  *Id.* at 423.

An April 2015 CT scan showed facial tissue deformities near the parotid gland, which represented either post-surgical changes or another tumor.  *Id.* at 426.

Mr. Alvarez's primary care physicians assessed depression and anxiety throughout the period under review.  He received regular mental health therapy and counselling

between September 30, 2014, and April 22, 2015, when the record closes. *Id.* at 353-84, 385-99.

In May 2015, Dr. Padilla stated that Mr. Alvarez's vision and balance were impaired due to vision distortions related to his disfigured eyelid. *Id.* at 455-56. Dr. Meldrum concurrently opined that Mr. Alvarez continued to experience left eyelid dysfunction as of December 30, 2014, and stated that Mr. Alvarez would require time off work to recover from additional reconstructive surgery. *Id.* at 462, 465.

## DISABILITY ANALYSIS

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The Commissioner reserves disability determinations for itself, *id.* at §§ 404.1537(d); 416.927(d), and follows a five-step regulatory inquiry in assessing disability claims under the Act. *Id.* at §§ 404.1520(a)(4); 416.920(a)(4); *Tackett v. Apfel*, 180 F3d 1094, 1098 (9th Cir 1999). The claimant bears the burden of persuasion at steps one to four; the Commissioner shoulders the burden of evidentiary production at step five. *Id.* at 1099; 20 CFR §§ 404.1560(c)(2); 416.960(c)(2).

The five-step regulatory analysis first determines if a claimant (1) is currently working; (2) has a medically determinable impairment presenting a barrier to work activity; or (3) meets or equals a regulatory disability definition based upon codified medical criteria. *Id.* at §§ 404.1520(a)(4)(i-iii); 416.920(a)(4)(i-iii).

If the claimant is not working, has a qualifying impairment, and does not meet a listed disorder, the Commissioner assesses his residual functional capacity ("RFC"). *Id.* at §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). The RFC is the most he can do despite limitations imposed by his impairment. *Id.* at §§ 404.1545; 416.945. The Commissioner subsequently determines if the claimant may (4) perform his past work, or (5) perform work in the national economy. *Id.* at §§ 404.1520(a)(4)(iv-v); 416.920(a)(4)(iv-v). If he can perform such work, he is not disabled under the Act. *Id.* at §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); *Tackett*, 180 F3d at 1099. If a claimant cannot perform work in the national economy, the Act and regulations direct a finding of disability. 42 USC § 423(d); 20 CFR §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).

## THE ALJ'S FINDINGS

The ALJ made findings pertaining to steps one and two only. He concluded at step one that Mr. Alvarez has not engaged in substantial gainful activity since his December 31, 2013 alleged onset date. Tr. 17.

At step two, the ALJ discussed Mr. Alvarez's obesity, situational depression, anxiety, and "status post squamous cancer excision with subsequent radiation treatment." *Id.* at 18. He concluded these were "medically determinable impairments" pursuant to 20 CFR §§ 404.1521 and 416.921, but found they did not meet the statutory and regulatory twelve-month durational requirement. Tr. 18. The ALJ concurrently found Mr. Alvarez's symptom testimony "not entirely credible." *Id.* at 19. Because the ALJ found that Mr. Alvarez's impairments did not last more than twelve months, he truncated his analysis at step two and found Mr. Alvarez not disabled under the Act. Tr. 25.

## STANDARD OF REVIEW

This court must affirm the ALJ's decision if it is based on proper legal standards and supported by substantial evidence.  42 USC § 405(g); *Brown-Hunter v. Colvin*, 806 F3d 487, 492 (9th Cir 2015).  "Substantial evidence" means "more than a scintilla but less than preponderance." *Garrison v. Colvin*, 759 F3d 995, 1009 (9th Cir 2014) (quoting *Lingenfelter v. Astrue*, 504 F3d 1029, 1035 (9th Cir 2007)).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Variable interpretations of the evidence are insignificant if the Commissioner's is a rational reading of the record, and the reviewing court may not substitute its judgment for that of the Commissioner.  *Id.* at 1010 (quoting *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995)).  Here, this court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of evidence."  *Orn v. Astrue*, 495 F3d 625, 630 (9th Cir 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 446 F3d 880, 882 (9th Cir 2006)); *see* also *Garrison*, 759 F3d at 1009-10.  It may not affirm the Commissioner on grounds upon which the ALJ did not rely.  *Burrell v. Colvin*, 775 F3d 1133, 1138 (9th Cir 2014) (citing *Connett v. Barnhart*, 340 F3d 871, 874 (9th Cir 2003)); *see* also *Brown-Hunter*, 806 F3d at 1133, 1138.

## DISCUSSION

The issue upon review is whether Mr. Alvarez's impairments lasted, or were expected to last, more than twelve months.  Mr. Alvarez cannot establish disability without such determination.  If his impairments meet the durational requirement, further analysis addressing his workplace abilities must occur before a disability determination is made.

Mr. Alvarez challenges the ALJ's evaluation of (1) his testimony, (2) his girlfriend's testimony, (3) physician opinions, and (4) a mental health therapist's opinion.  He consequently (5) challenges the ALJ's conclusion that he did not meet regulatory durational requirements at step two in the sequential proceedings.  Mr. Alvarez requests remand awarding benefits.

## I.    Testimonial Evidence

### A.  Mr. Alvarez's Testimony

#### 1.    Standards

The Act allows consideration of a claimant's symptom testimony.  Pain allegations must correspond to a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged . . . ."  42 USC § 423(d)(5)(A). The regulations subsequently direct the Commissioner to consider a claimant's statements regarding his symptoms.  20 CFR §§ 404.1529(a); 416.929(a). This analysis is individualized, but alleged pain and functional limitation must again relate to a medically-determinable impairment. *Id.* at §§ 404.1529; 416.929.

The Ninth Circuit consequently directs a two-step process in evaluating a claimant's pain and symptom testimony.  First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce pain or other symptoms alleged." *Lingenfelter*, 504 F3d at 1036. Here, the claimant need only show that the impairment "could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F3d 1273, 1282 (9th Cir 1996) (*reaff'd by Brown-Hunter*, 806 F3d at 493).  Second, absent evidence of malingering, the ALJ may conclusively reject a claimant's testimony to the severity of her symptoms only by offering

"specific, clear and convincing reasons for doing so." *Brown-Hunter*, 806 F3d at 493 (citing *Burrell*, 775 F3d at 1136-37); *see also Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F3d 1155, 1160 (9th Cir 2008) (citing *Lingenfelter*, 504 F3d at 1036). Such findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Bunnell v. Sullivan*, 947 F3d 341, 345-46 (9th Cir 1991) (*en banc*); *see also Brown-Hunter*, 806 F3d at 493.

The "clear and convincing" standard has long controlled the Ninth Circuit's judicial review of a social security claimant's testimony under the standards above. The Ninth Circuit recently and repeatedly reaffirms the standard, noting that while the *en banc Bunnell* panel was silent on the matter, "there is no indication that *Bunnell* intended to overrule that precedent." *Burrell*, 775 F3d 1133, 1137 (9th Cir 2014). Instead, *Bunnell* supplements earlier authority. *Brown-Hunter*, 806 F3d at 493 (quoting *id.*). Therefore, the clear and convincing standard controls. *Id.*; *see, e.g., Burrell*, 775 F3d at 1137, *Molina v. Astrue*, 674 F3d 1104, 1112 (9th Cir 2012); *Swenson v. Sullivan*, 876 F2d 683, 687 (9th Cir 1989); *Gallant v. Heckler*, 753 F2d 1450, 1455 (9th Cir 1984).

This Court may not now deviate from the "clear and convincing" standard pertaining to a claimant's testimony, despite the Commissioner's inferential invitation. Def.'s Br. 11.

### B. Analysis

#### 1. Activities of Daily Living

The ALJ cited Mr. Alvarez's daily activities. The ALJ noted that "despite complaints about left eye problems, [Mr. Alvarez] was able to read the Bible, walk, drive a car, and go outside alone." Tr. 20. He cited Mr. Alvarez's hearing testimony that he "occasionally rides bikes with his girlfriend." *Id.* The ALJ also cited reports that Mr.

Alvarez could watch television and movies, prepare meals, grocery shop, attend church and medical appointments, and "maintain a relationship, all indicating he is pretty functional." *Id.* at 20-21.

The ALJ's analysis may cite activities of daily living in conjunction with other factors such as frequency and intensity of reported symptoms, medication and its effects, and treatment utilized.  20 CFR §§ 404.1529(c)(3); 416.929(c)(3).  Inconsistencies between testimony and reported activities may support adverse findings.  *Molina*, 674 F3d at 1112; *Burrell*, 775 F3d at 1137 (citing *Light v. Soc. Sec. Admin.*, 119 F3d 789, 792 (9th Cir. 1997)).  But, such reasons must be "sufficiently specific to permit the reviewing court that the ALJ did not arbitrarily discredit the claimant's testimony," *Dodrill v. Shalala*, 12 F3d 915, 918 (9th Cir. 1993), and the ALJ must make "specific findings relating to the daily activities" and their transferability to a work environment.  *Orn*, 459 F3d at 639; *see also Molina*, 674 F3d at 1113.  Where an ALJ's analysis is subject to more than one plausible interpretation, the reviewing court must affirm the ALJ's findings if they are reasonable and supported by substantial evidence.  *Rollins v. Massinari*, 261 F3d 853, 857 (9th Cir. 2001).  It must exercise caution in identifying such findings.  *Garrison*, 759 F3d at 1016.

The ALJ's citation to Mr. Alvarez's bicycle riding is unsupported by the record. Contrary to the ALJ's statement, the matter was not discussed at hearing. Further, Mr. Alvarez did not endorse riding a bike in two reports of activities of daily living submitted to the record.  Tr. 212, 244.  This reasoning is not sustained.

The ALJ's remaining citations indicate sporadic completion of household chores, watching television, and medical appointment attendance.  Such activities are not transferable to the workplace unless the claimant is capable of spending a substantial part of

his day engaging in functions transferable to a work setting. *Orn*, 495 F3d at 639. The ALJ made no such finding. While this court must affirm reasonable inferences, *Batson v. Comm'r*, 359 F3d 1190, 1193 (9th Cir 2004), the record does not support the ALJ's conclusion that Mr. Alvarez completed daily activities either transferable to a work environment or inconsistent with his disability allegation.

## 2. Work History

The ALJ noted Mr. Alvarez's "strong work history" at his hearing. Tr. 46. The ALJ found that this history and Mr. Alvarez's desire to resume work augmented his testimony. Tr. 21. Despite this finding, the ALJ subsequently rejected Mr. Alvarez's hearing testimony that his physician instructed him not to work. *Id.* at 20. Here, the ALJ cited an April 15, 2015 mental health counselling note stating that Mr. Alvarez "does get odd jobs but reports his energy isn't back to what it used to be." *Id.* (citing *id.* at 386).

The record shows that Mr. Alvarez's primary care physician, Dr. Padilla, noted these work attempts on May 1, 2015, but strongly recommended Mr. Alvarez refrain from working until his surgical recovery was complete. Tr.422. Dr. Padilla emphasized that this restriction especially pertained to Mr. Alvarez's left eye disfigurement and associated infection risk. *Id.* He also addressed Mr. Alvarez's resulting visual disturbances impacting his balance, and concurrent fatigue. Tr. 422-23.

This record supports Mr. Alvarez's testimony on the matter. Further, as of his May 29, 2015 hearing date, Mr. Alvarez had not yet received final left eyelid reconstructive surgery. Tr. 41. The ALJ therefore erroneously discounted Mr. Alvarez's testimony that his physician restricted him from work.

///

### 3. Failure to Follow Treatment

A claimant must follow recommended treatment that would restore workplace ability, 20 CFR §§ 404.1530(a); 416.930(a), and treatment history is a relevant factor in assessing symptom testimony. *Id.* at §§ 404.1529(c)(3)(v); 416.929(c)(3)(v). The ALJ may properly rely upon "unexplained or inadequately explained failure to seek treatment or to follow prescribed treatment." *Molina*, 674 F3d at 1113 (*quoting Tommasetti v. Astrue*, 553 F3d 1035, 1039 (9th Cir. 2008)). But, the ALJ may not rely upon a claimant's failure to seek treatment if he cannot afford it. *Orn v. Astrue*, 495 F3d 625, 638 (9th Cir 2007) (citing *Gamble v. Chater*, 68 F3d 319, 321 (9th Cir. 1995)).

The ALJ made several passing references to Mr. Alvarez's failure to follow treatment. He stated that Mr. Alvarez "failed to show" for a May 14, 2014 radiology-oncology appointment, which "implies that the claimant's symptoms are not particularly troublesome." *Id.* at 19. This inference is unsupported: Mr. Alvarez consistently sought treatment for his conditions between December 2013 and May 2015, when the record closes. He testified that changes in insurance coverage interrupted continuity of care (Tr. 41), and in June 2014 he told his radiologist that his insurance was changing and he would have to switch providers. Tr. 273. Nothing in this record indicates that Mr. Alvarez systematically evaded, avoided, or failed to seek treatment in a manner contradicting regulatory instruction that he follow treatment that would restore his workplace abilities. The ALJ's inference is not sustained.

The ALJ also repeatedly noted that Mr. Alvarez "continued to smoke." Tr. 19, 20. An ALJ's citation to smoking must correlate a claimant's failure to cease smoking as directed by medical personnel to a finding that the claimant could return to work but for this

failure. *Byrnes v. Shalala*, 60 F3d 639, 641 (9th Cir. 1995). The ALJ made no such

identifiable finding. The ALJ's citation to this behavior is therefore not sustained.

Finally, the ALJ found that Mr. Alvarez "went out in the sun 'quite a bit,' suggesting

noncompliance and that the claimant has contributed, at least in part, to his ongoing

condition." Tr. 19. The ALJ's indicated citation shows that Mr. Alvarez's girlfriend

volunteered to his radiologist that "he has been out in the sun quite a bit." *Id.* at 273. This

spontaneous comment does not establish that Mr. Alvarez sought sun exposure without

appropriate protection, explain the girlfriend's observation, or otherwise suggest deliberate

noncompliance with treatment. While this Court must affirm an ALJ's inferences

reasonably drawn, *Batson*, 359 F3d at 1193, this isolated comment does not establish that

Mr. Alvarez failed to follow treatment recommendations pertaining to his impairments.

For all of these reasons, the ALJ's evaluation of Mr. Alvarez's symptom testimony is

not sustained.

## II. Medical Evidence

Mr. Alvarez challenges the ALJ's evaluation of two treating physicians and a mental

health therapist.

### A. Physician Opinions

#### 1. Standards

The Commissioner relies upon medical evidence to make disability determinations;

her regulations distinguish between treating, examining, and reviewing physicians. 20 CFR

§§ 404.1527(c) and (e); 416.927(c) and (e). The regulations reserve disability

determinations to the Commissioner, and a physician's statement that an individual is

unable to work does not direct a finding of disability. *Id.* at §§ 404.1527(d)(1);

416.927(d)(1).  The ALJ cannot "give any special significance" to the source of an opinion on this issue.  *Id.* at §§ 404.1527(d)(2) and 416.927(d)(2).

Judicial review consequently distinguishes between treating, examining, and reviewing physicians.  *See, e.g., Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995).  A treating physician's opinion "must be given controlling weight if that opinion is well supported and not inconsistent with other substantial evidence in the case record."  *Edlund v. Massinari*, 253 F3d 1152, 1157 (9th Cir 2001).  The ALJ resolves "conflicting medical evidence" on the matter, but "must present clear and convincing reasons for rejecting the uncontroverted opinion of a claimant's physician."  *Thomas v. Barnhart*, 278 F3d 947, 956-57 (9th Cir 2002).  An examining physician's opinion, in turn, receives greater weight than that of a reviewing physician, and the ALJ must set out "specific, legitimate" reasons for rejecting the opinion of an examining physician for that of a reviewing physician.  *Nguyen v. Chater*, 100 F3d 1462, 1466 (9th Cir 1996), citing *Lester*, 81 F3d at 831.

### ii.  Arnoldo Padilla Vasquez, M.D.

Dr. Padilla served as Mr. Alvarez's treating general physician between at least May 2012 and May 2015, when the record closes.  Tr. 403-444.  Dr. Padilla completed an evaluation questionnaire on May 12, 2015.  Tr. 455-59.

The ALJ discussed Dr. Padilla's May 12, 2015 evaluation at length.  Tr. 22.  He noted Dr. Padilla's opinion that surgical recovery would likely take more than twelve months, and included complications related to Mr. Alvarez's eyelid disfigurement such as decreased vision and balance, increased risk of falling, and vulnerability to eye infection.  *Id.*  The ALJ and gave the assessment "little weight" because Dr. Padilla "did not submit

objective information to support his assessments and the record does not indicate limitations to the degree alleged."  *Id.*

The record shows that Dr. Padilla performed routine general care, and left specialty care to Mr. Alvarez's cancer treatment team.  On May 1, 2015, Dr. Padilla stated that Mr. Alvarez has a decreased left-eye visual field, and "difficulty with his balance because of this."  Tr. 422.  Dr. Padilla stated that Mr. Alvarez had an increased risk of falling in performing manual labor.  *Id.*  Finally, Dr. Padilla stated that Mr. Alvarez could not fully close his left eye and experienced consequent underlying irritation, which increased his infection risk in outdoor environments.  *Id.*

On May 12, 2015, Dr. Padilla wrote, "Note: physical strength is not the issue here. He has vison limitations and risk of eye irritation/infection."  Tr. 458.  Dr. Padilla otherwise repeated his earlier statements regarding Mr. Alvarez's decreased left-eye visual field and impaired visual acuity, with decreased balance and concurrent risk of falling.  Tr. 455-56.

The ALJ found that Dr. Padilla did not submit "objective information to support his assessments and the record does not indicate limitations to the degree alleged."  Tr. 22.  The ALJ also found that Dr. Padilla relied upon Mr. Alvarez's subjective complaints, and found that the record did not contain a "detailed eye examination."  *Id.*

Dr. Padilla's clinical notes repeatedly discussed his own observations of Mr. Alvarez's eye symptoms in October and November 2014, and in May 2015.  Tr. 420-22. Contrary to the ALJ's finding, Dr. Padilla did not assess exertional limitations, and specifically stated "strength is not the issue."  Tr. 457- 58.  Finally, because the ALJ's assessment of Mr. Alvarez's testimony is not sustained, it does not now support the ALJ's

rejection of Dr. Padilla's opinion.  For all of these reasons, the ALJ's conclusion regarding

Dr. Padilla's opinion is not sustained.

### ii.      Garth Meldrum, M.D.

Dr. Meldrum treated Mr. Alvarez between January 7, 2014 and May 2015, when the

record closes.  Tr. 324-43, 378-84, 466.   Treatment included numerous surgical procedures,

described above, and associated close follow up and longitudinal care.  *See* Tr. 466.  Dr.

Meldrum completed an evaluation questionnaire on May 27, 2015, stating that Mr.

Alvarez's eyelid disfiguration remained symptomatic, and that he did not know the extent of

Mr. Alvarez's fatigue symptoms.  Tr. 462.  Dr. Meldrum also indicated that Mr. Alvarez

might "possibly" miss more than four workdays per month "initially after surgery."  Tr. 465.

The ALJ gave the opinion "partial weight," specifically finding that the record did

not support four workplace absences per month.  *Id.* at 23.  The ALJ based this finding upon

Mr. Alvarez's daily activities and "anticipated eyelid surgery."  *Id.*

The ALJ's reasoning failed to account for the record before him.  As discussed, the

ALJ erroneously evaluated Mr. Alvarez's daily activities, and this reasoning cannot now be

sustained in addressing Dr. Meldrum's opinion.

Further, Mr. Alvarez testified at his hearing that he was still awaiting eyelid surgery.

Tr. 41.  In response to questioning, he stated that his insurance coverage changed several

times in the preceding period, he did not know if the procedure had been approved for

payment, and that he did not receive a return phone call from Dr. Meldrum's office on the

matter.  Tr. 42.  Mr. Alvarez also stated he intended to ask Dr. Meldrum's office about the

matter, and would ask Dr. Padilla's office as well.  *Id.*

The ALJ's assumption that Mr. Alvarez would shortly receive reconstructive eyelid surgery in May 2015 therefore does not establish that Mr. Alvarez's medically determinable impairment, which began in December 2013, lasted less than twelve months.  Because the matter is one of duration pursuant to the regulatory twelve-month durational requirement, rather than total disability, the issue pertaining to the number of days off work following surgery is presently irrelevant.  The ALJ's consequential rejection of Dr. Meldrum's opinion is therefore not sustained.

### B.    Mental Health Therapist Opinions

#### 1.  Standards

The regulations delicately codify evaluation of mental health therapist observations and opinions.   Therapists that do not practice as licensed physicians or psychologists are excluded from defined "acceptable medical sources."   20 CFR §§ 404.1513(a); 416.913(a). However, all "therapists," including mental health therapists, remain "medical sources" pursuant to 20 CFR §§ 404.1513(d)(1); 416.913(d)(1).  These are termed "non-acceptable" medical sources or "other" medical sources.

The Commissioner clarifies that although the regulations do not explicitly address non-acceptable medical source opinions, they require consideration of them, and interpretation "will vary according to the particular facts of the case."  SSR 06-3p, available at 2006 WL 2329930 at *4.[2]  Specifically:

///

///

---

[2] Social Security Rulings reflect the Commissioner's interpretation of its regulations.  *Molina v. Astrue*, 674 F3d 1104, 1113 n5 (9th Cir 2012) (internal citations omitted).  They do not carry the force of law, but bind the Commissioner and are entitled to some deference if consistent with the Act and codifying regulations.  *Id.*

> Opinions from "other medical sources" may reflect the source's judgment about some of the same issues addressed in medical opinions from "acceptable medical sources," including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions.

*Id.* at *5.

The Ninth Circuit addresses non-acceptable medical sources acting without physician oversight as "lay" testimony and applies the same standard as to evaluation of lay testimony submitted by a claimant's family and friends. *Molina*, 674 F3d at 1111 (citing *Gomez v. Chater*, 74 F3d 967, 971 (9th Cir 1996). Here, the ALJ must give reasons "germane" to the witness in discrediting such opinions. *Molina*, 674 F3d at 1111. The ALJ may also reject lay testimony to the extent it is predicated upon a claimant's testimony that is properly rejected. *Id.* at 1114 (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F3d 685, 694 (9th Cir 2009)).

### 2. Therapist Elizabeth Lyman's Opinion

Elizabeth Lyman, M.S., Qualified Mental Health Therapist ("QMHT"), submitted a letter to the record in response to inquiry from Mr. Alvarez's counsel on April 21, 2015. Tr. 398-99. She stated that Mr. Alvarez receives biweekly therapy, and described his symptoms of depression and fatigue. *Id.* at 398. Ms. Lyman also stated that Mr. Alvarez was awaiting left eyelid surgery, and "will need to rest and recover" following the procedure. *Id.* Finally, Ms. Lyman articulated Mr. Alvarez's report that he feared recurrence of his cancer, and his hopes of returning to work and regaining self-sufficiency. *Id.*

The ALJ awarded Ms. Lyman's opinion "partial weight." Tr. 22. He accepted Ms. Lyman's report of Mr. Alvarez's social skills, but noted "most of the assessment is

subjective, based on the claimant's self-reporting.  As discussed above, his health condition has stabilized following surgery." *Id.*

Here, the ALJ did not properly discredit Mr. Alvarez's testimony, for the reasons discussed above.  His reasoning regarding Ms. Lyman's report is therefore not sustained.

The ALJ also erred in according Ms. Lyman's opinion less weight because it was solicited by counsel.  The "purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester*, 81 F3d at 832.  This reasoning is not sustained.

## III.   The ALJ's Step Two Findings

### A.  Step Two Standards

The Act defines "disability" as inability to work due to a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 USC §§ 423(d)(1)(A); 1382c(a)(3)(A).   The Commissioner's regulations assess "severity" in order to "efficiently and reliably" identify claimant's with medical impairments that are "so slight that it is unlikely they would be found disabled even if their age, education, and experience were taken into account."   *Bowen v. Yuckert*, 482 US 137, 153 (1997).

The regulations state, "An impairment is not severe if it does not significantly limit your physical or mental ability to do basic work activities."  20 CFR §§ 404.1521(a); 416.921(a).  If a claimant has two or more unrelated impairments that concurrently meet the twelve-month durational requirement, the Commissioner must consider their effects together.  *Id.* at §§ 404.1522(b); 416.922(b).  A claimant may not, however, combine unrelated impairments to meet the durational requirement.  *Id.* at §§404.1522(a);

416.922(a).  Omissions under this analysis are harmless where an ALJ proceeds beyond step

two in the sequential evaluation and makes findings at steps three, four, and, potentially,

five.  *Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007).

### B.  Analysis

The ALJ found Mr. Alvarez's obesity, skin cancer, anxiety, and depression medically

determinable under the regulations.  Tr. 18.  The parties dispute whether these impairments

lasted twelve months or longer.

To proceed in adjudication beyond step two in the regulatory analysis, Mr. Alvarez

must show that his impairments remained medically determinable for one year subsequent

to his December 30, 2013 onset date.  The record now before the court closes on May 27,

2015.  Tr. 465.  Drs. Padilla and Meldrum both submitted opinions to the record in May

2015 stating that Mr. Alvarez continued to experience symptoms that would interfere with

workplace functioning at that time.   A plain reading of this record announces that Mr.

Alvarez's post-surgical skin cancer complications, eye disease, anxiety, and depression

remained medically determinable in May, 2015 (*id.* at 455), and that associated treatment

lasted beyond December 30, 2014.  *Id.* at 462.  The ALJ therefore erred in finding

otherwise.

### IV.    Remand

### A.  Remand Standards

The Court exercises discretion in determining remand parameters.  *Treichler*, 775

F3d at 1099-1100; *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir 2000), *cert. denied*, 513

US 1038 (2000).  42 USC § 405(g), sentence four, instructs that the reviewing court may

"affirm, modify, or reverse the Commissioner's decision "with or without remanding the

cause for a rehearing."    The "ordinary remand" rule instructs that the proper course is, generally, to remand to the agency for additional proceedings. *Treichler*, 775 F3d at 1099; *see* also *Dominguez v. Colvin*, 808 F3d 403, 407-08 (9th Cir 2015).

A remand for award of benefits is appropriate where further administrative proceedings would serve no useful purpose and the record is fully developed. *Treichler*, 775 F3d at 1100; *Strauss v. Comm'r*, 635 F3d 1135, 1138-139 (9th Cir 2011) (quoting *Benecke v. Barnhart*, 379 F3d 587, 593 (9th Cir 2004)). Here, the Court must conduct a "credit-as-true" analysis. *Strauss*, 635 F3d at 1138.

The "credit-as-true" doctrine directs that evidence be credited and an immediate award of benefits where: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues requiring resolution before a disability determination can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled should the evidence be credited. *Treichler*, 775 F3d at 1101-02. Application is discretionary. *Id.* at 1102; *see* also *Connett v. Barnhart*, 340 F3d 871, 876 (9th Cir 2003) (citing *Bunnell*, 947 F2d at 348 (*en banc*)). The Court declines to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F3d 1032, 1035 (9th Cir 2010).

### B.  Remand Analysis

The ALJ erred in his assessment of Mr. Alvarez's testimony, the opinions of Drs. Padilla and Meldrum, and that of Ms. Lyman.    This evidence plainly shows that Mr. Alvarez's impairments lasted at least twelve months beyond his December 30, 2013 alleged onset date.  Because the ALJ's findings ceased at step two of the regulatory analysis, he did not assess a residual functional capacity pursuant to 20 CFR §§ 404.1545; 416.945.  Nor did

the ALJ make further findings regarding Mr. Alvarez's ability to return to his past work or perform other work in the national economy at steps four and five.

This Court cannot now construe such findings. Although Mr. Alvarez asserts the erroneously evaluated evidence should be credited, he does not point to any specific evidence clearly establishing disability, or articulate a theory of disability under the remaining regulatory analysis at steps three, four, and five. Further, construction of a claimant's RFC is reserved to the ALJ. *Dominguez*, 808 F3d at 904 (citing 20 CFR § 415.927(d)(2)). Significant outstanding issues therefore remain. Consequently, the Court credits no evidence, and remands the matter for further proceedings to address Mr. Alvarez's post-surgical skin cancer status, eye disease, mental impairments, and obesity in a full disability analysis.

## ORDER

For the reasons discussed above, the Commissioner's decision is REVERSED and REMANDED pursuant to 42 USC § 405(g), sentence four.

DATED December 6, 2016.

/s/Youlee Yim You
_____
Youlee Yim You
United States Magistrate Judge